Approved: _____
KEDAR S. BHATIA
Assistant United States Attorney

Before:   THE HONORABLE ROBERT W. LEHRBURGER
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - - X
                                  :   COMPLAINT
UNITED STATES OF AMERICA          :
                                  :   Violation of
     - v. -                       :   21 U.S.C. § 846
                                  :
RODOLFO HENRIQUEZ CAMPUSANO,      :   COUNTY OF OFFENSE:
     a/k/a "Gordo," and           :   BRONX
ERICK SPIVEY,                     :
                                  :
          Defendants.             :
- - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

JOSE SANDOBAL, being duly sworn, deposes and says that he is a Task Force Officer with the Drug Enforcement Administration ("DEA"), and charges as follows:

COUNT ONE
(Narcotics Conspiracy)

1. From at least in or about August 2020 through on or about September 8, 2020, in the Southern District of New York and elsewhere, RODOLFO HENRIQUEZ CAMPUSANO, a/k/a "Gordo," and ERICK SPIVEY, the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

2. It was a part and an object of the conspiracy that RODOLFO HENRIQUEZ CAMPUSANO, a/k/a "Gordo," and ERICK SPIVEY, the defendants, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

3. The controlled substance that RODOLFO HENRIQUEZ CAMPUSANO, a/k/a "Gordo," and ERICK SPIVEY, the defendants,

conspired to distribute and possess with intent to distribute was 400 grams and more of mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

The bases for my knowledge and the foregoing charge are, in part, as follows:

4. I am a Detective with the New York City Police Department and a Task Force Officer with the DEA. I have been personally involved in the investigation of this matter. This Affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals. Because this Affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5. As set forth below, in or about September 2020, RODOLFO HENRIQUEZ CAMPUSANO, a/k/a "Gordo," the defendant, agreed to sell approximately one kilogram of fentanyl to a confidential source ("CS-1"). On the day of the transaction, CAMPUSANO and ERICK SPIVEY, the defendant, met with CS-1 and showed CS-1 the kilogram of fentanyl before they were ultimately arrested by law enforcement. During a search of CAMPUSANO's apartment following his arrest, law enforcement found additional suspected fentanyl, drug paraphernalia, and an amount of cash consistent with CAMPUSANO having previously sold a kilogram of fentanyl to another buyer.

6. Based on my conversations with law enforcement officers and CS-1, my review of documents, my training and experience, and my involvement in this investigation, I have learned the following, among other things:

    a. Since approximately February 2020, the DEA has been investigating a particular drug trafficking organization ("DTO") that traffics heroin and fentanyl in the New York City area. During the investigation, the DEA has, among other things, that identified a particular individual ("CC-1") who is believed to be a source of supply of the unlawful controlled substances for the DTO.

b. In or about August 2020, CC-1 told CS-1, in substance and in part, that a shipment of approximately 10 kilograms of fentanyl had arrived in the New York area. CC-1 also told CS-1, in substance and in part, that someone would be contacting CS-1 to conduct a deal to sell the fentanyl to CS-1. CS-1 subsequently received a message from a particular individual ("CC-2"), who was working on behalf of CC-1. CC-2 asked CS-1 to call him to set up an in-person meeting, but CC-2 ultimately did not meet with CS-1.

c. On or about September 2, 2020, an individual identifying himself as "GORDO," who, as set forth below, was later identified as RODOLFO HENRIQUEZ CAMPUSANO, the defendant, called CS-1 on behalf of CC-1. In substance and in part, CAMPUSANO sought to set up an in-person meeting with CS-1. CC-1 later told CS-1, in sum and substance, that "GORDO" was part of the same organization as CC-2.

d. On or about September 4, 2020, CS-1 and CAMPUSANO met in the vicinity of a particular residential building in the Bronx, New York ("Building-1"). During the meeting, CAMPUSANO told CS-1, in substance and in part, that CAMPUSANO had two kilograms available upstairs and invited CS-1 to see the kilograms. Based on my training and experience, I believe the reference to kilograms is a reference to unlawful controlled substances. Furthermore, based on my training and experience and participation in this investigation, including my knowledge of CAMPUSANO's actions shortly after inviting CS-1 to view the kilograms, I believe that CAMPUSANO's reference to viewing the kilograms of narcotics upstairs is a reference to traveling to a nearby apartment where CAMPUSANO resides ("Apartment-1") to view the controlled substances to determine if they are suitable to conduct a narcotics transaction. CS-1 then told CAMPUSANO, in sum and substance, that CS-1 did not have sufficient funds to conduct the deal and instead was only meeting to set up a future transaction. CAMPUSANO then offered to provide a sample of narcotics. Law enforcement officers then observed CAMPUSANO leave Building-1, travel into the nearby building containing Apartment-1, and then return to Building-1. CAMPUSANO then provided CS-1 with a clear plastic twist bag containing a powdery substance, which, based on my training and experience, is consistent with the appearance and packaging of unlawful controlled substances (the "Twist Narcotics").

e. On or about September 7, 2020, CAMPUSANO contacted CS-1 and informed CS-1, in substance and in part, that CAMPUSANO had sold one kilogram but had another kilogram remaining for CS-1. Based on my training and experience, I believe that

3

CAMPUSANO was informing CS-1 that CAMPUSANO had sold one kilogram of narcotics, but that he had one kilogram left that he could sell to CS-1.

f. On or about September 8, 2020, CS-1 and CAMPUSANO again communicated via phone call and text message. CS-1 told CAMPUSANO, in substance and in part, that CS-1 was near the vicinity of their prior meeting. CAMPUSANO then told CS-1 that CAMPUSANO was coming down. Soon thereafter, law enforcement officers who were conducting surveillance observed CAMPUSANO leave Apartment-1 carrying a blue bag (the "Blue Bag").[1] CAMPUSANO then traveled on to the street and walked to the vicinity of Building-1. There, CAMPUSANO called CS-1 and told him to come over. When CS-1 approached CAMPUSANO, he observed that CAMPUSANO was standing with another individual, later identified as ERICK SPIVEY, the defendant. CS-1 observed CAMPUSANO carrying the Blue Bag. Around that time, CAMPUSANO gave the Blue Bag to SPIVEY.

g. After meeting up with CS-1, CAMPUSANO insisted that he, SPIVEY, and CS-1 go inside Building-1 to conduct their transaction. Once inside Building-1, CAMPUSANO, SPIVEY, and CS-1 entered the building elevator, and CS-1 held the elevator door open. CAMPUSANO then took the Blue Bag back from SPIVEY and showed CS-1 the contents of the Blue Bag. Inside the bag, CS-1 observed a large quantity of powdery substances wrapped in plastic. Based on my training and experience and my participation in this investigation, the substance that CS-1 observed in the Blue Bag is consistent with the appearance and packaging of unlawful controlled substances. After showing the contents of the Blue Bag to CS-1, CAMPUSANO gave the Blue Bag back to SPIVEY.

h. CS-1 then told CAMPUSANO, in substance and in part, that CS-1 did not have money for the deal, but instead another person several blocks away had the money. CS-1 and CAMPUSANO left Building-1 and SPIVEY trailed behind them carrying the Blue Bag. After walking for a distance, CAMPUSANO told CS-1, in substance and in part, that CAMPUSANO would not travel further to meet with the individual who had the money, and instead insisted that that person travel to meet with him. Law enforcement officers then moved in and placed CAMPUSANO and SPIVEY under arrest.

---

[1] On September 4, 2020, CS-1 and CAMPUSANO met in a particular vehicle ("Vehicle-1") parked in the vicinity of Building-1. Based on my review of vehicle registration records, I have learned that Vehicle-1 is registered to "R. Henriquez Campusano" at Apartment-1.

          i.  As officers were attempting to restrain SPIVEY, he dropped the Blue Bag. Inside the Blue Bag, law enforcement officers observed a large quantity of a powdery substance wrapped in plastic (the "Blue Bag Narcotics"). Based on my training and experience, the Blue Bag Narcotics are consistent with the appearance and packaging of unlawful controlled substances including fentanyl.

        7.  Based on my conversations with other law enforcement officers and my review of law enforcement records, I have learned that the Blue Bag Narcotics were subsequently weighed and analyzed in a preliminary test. The Blue Bag Narcotics consist of approximately one kilogram of mixtures and substances containing detectable amounts of fentanyl.

        8.  On or about September 8, 2020, law enforcement officers searched Apartment-1 pursuant to a judicially authorized warrant. Inside a closet in Apartment-1 ("Closet-1"), law enforcement officers found approximately 2 pounds of pills that are consistent with the color and shape of fentanyl pills, and contain a unique imprint matching the imprint found on pills previously shipped to the United States by CC-1 and seized by law enforcement officers. Furthermore, law enforcement officers found inside Closet-1 glassine bags and a scale, which, based on my training and experience, are commonly used narcotics trafficking paraphernalia. Law enforcement officers also found small bags matching the packaging of the Twist Narcotics. Law enforcement officers also seized approximately $50,000 from Closet-1, which matches the approximate cost of one kilogram of fentanyl, which, as discussed above, is consistent RODOLFO HENRIQUEZ CAMPUSANO, a/k/a "Gordo," the defendant, having sold one kilogram of fentanyl prior to meeting with CS-1 on September 8, 2020.

        9.  On or about September 8, 2020, law enforcement officers interviewed ERICK SPIVEY, the defendant, after he was taken into custody. SPIVEY was advised of his *Miranda* rights and waived those rights. SPIVEY provided consent for law enforcement officers to search the contents of a cellphone that was on his person at the time of his arrest ("Cellphone-1"). On Cellphone-1, law enforcement officers found photographs of kilogram-sized quantities of powdery substances, which, based on my training and experience, are consistent with the appearance and packaging of unlawful controlled substances. One of the photographs depicted a quantity of narcotics that appeared similar in color and packaging to the Blue Bag Narcotics and contained the same unique stamp. Law enforcement officers also observed communications with co-conspirators, including CC-2.

WHEREFORE, I respectfully request that RODOLFO HENRIQUEZ CAMPUSANO, a/k/a "Gordo," and ERICK SPIVEY, the defendants, be imprisoned or bailed, as the case may be.

_S/ by the Court with consent_
Task Force Officer Jose Sandobal
Drug Enforcement Administration

Sworn to me through the transmission of this
Complaint by reliable electronic means,
pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure,
This 9th day of September, 2020.

_____
THE HONORABLE ROBERT W. LEHRBURGER
United States Magistrate Judge
Southern District of New York